PONDER, Justice.
 

 The executors filed a rule to have the inventories of this succession homologated which was answered by Mrs. Larry Vance Hunt, granddaughter and forced heir of the decedent. After the trial of the issues the lower court rendered judgment increasing the appraisement of the decedent’s 6%e interest in the Willow Chute Plantation from $34,579.12 to $49,259.07. From this judgment the executors and several legatees have appealed. The forced heir answered the appeal contending that the value placed on decedent’s interest on the Willow Chute Plantation was too low, and that the appraisement of the Willow Chute Plantation should be increased to the sum of $71,-780.
 

 The plantation is made up of hill and river bottom land. All the parties admit that the plantation contains approximately 1,960 acres, but there is a dispute as to the acreage of the hill and bottom land. There is a dispute as to the value of the river bottom land and the hill land. The lower court in its reasons for judgment reviews the testimony in the case. Upon examination of the record we find that the lower court’s statement of the testimony is fair, which is as follows:
 

 “The Bossier Parish inventory, tract No. 1, shows a total acreage of 1,960.50 acres; of which, 758 acres are bottom land and 1202 acres are hill land. The inventory places a valuation on the hill land of $6.00 per acre, and on the bottom land of $60.00 per acre. The proportion of bottom land and hill land is undoubtedly incorrect as shown by the survey made by Mr. Dutton of the bottom land.
 

 “Mr. Dutton’s survey shows 855.4 acres of bottom land, which would leave 1,105.10 acres óf hill land. This difference would necessarily lead to a correction of the inventory even accepting the values placed therein on hill land and bottom land.
 

 “As in all cages depending upon expert testimony of real estate values, there is a wide and irreconcilable variation of values. This is somewhat due to the natural antipathy existing between the ‘bulls’ and the ‘bears’; to the difference between the natural optimism of the real estate broker with ■ the subdivision ‘bee in his bonnet’ (which is so often a Mulberry Sellers affair, and so often does not pan out according to expectations) and the ‘hardboiled grouch’ of the practical planter who so often sees millions in it when the crop is fine along about June or July only to have his hopes dashed to earth by August rains or extreme
 
 *179
 
 drouth. If one can arrive at a happy medium between these two natural enemies, then the millenium will have been reached, and a judgment rendered which might be satisfactory to all concerned. But this is something we never hope to attain.
 

 “Mr. Whitten, Mr. Smith, Mr. Walker and Mr. Stephens, all of whom are co'mpetent, honest and reliable real estate brokers with a wealth of experience, testified ■for Mrs. Hunt. All of them testified that the hill land was worth Ten Dollars per acre, and it could be sold out in small tracts for that sum. The first three testified that 60 acres of the bottom land was worth $110.Q0 per acre. The only difference be^ tween them and Mr. Stephens was that he could subdivide 120 acres at the above price and the balance was worth $100.00 per acre.
 

 “Mr. Pittman, a practical Red River planter of many years experience, testified that the bottom land part of Willow Chute was worth $100.00 per acre as a whole if it was in the- same good condition that it was when he saw it in 1932.
 

 “Mr. J. A. Byrd, whose experience as a Red River planter is not disclosed by the record, but who has been farming for many years, testified that he considered the bottom land to be worth from $110.00 to $125.00 per acre, and the hill land $10.00 per acre.
 

 “On the other hand, Mr. Gayle, who has been ■ farming for about ten years, and who was one of the inventory appraisers, placed a value of $60.00 on the bottom land and $6.00 on the hill land; that a valuation of fifty to seventy-five dollars per acre would be a big value on most any river land that he knew of (judging from a production standpoint, year in .and year .out for the average farmer, and the year in and year out price, and witness was probably correct). . •
 

 “Mr. J. E. Burt, a man of long experience, and who has the reputation of being one of the best and most successful farmers in the Red River Valley, testified that he considered Willow Chute a fine place if it were placed in good condition, but that it was in the ordinary condition a place is in when rented out for a long time to people who do not take the necessary care of it. That the place, in the condition in which it was at the time of the death of Mrs. Vance was worth $65.00 or $70.00 per acre. That if the place was brought up to the condition of the adjoining place, owned by witness, it would be worth from $125.00 to $150.00 per acre.
 

 “Mr. Patterson, a plantation manager, considered the bottom land worth ’ $50.00 per acre..
 

 “Mr. J. G. Marston, a man of long planting experience in the bottoms, stated that he considered $60.00 per acre a fair price, considering the condition it was in; and the hill land $2.50 per acre, except a strip of 100 acres next to the bottom, the value of which he placed at $5.00 per acre.
 

 “Mr. W. J. Crowder, who has been in almost all phases of the land business, but who for- several years has been land man for the Commercial National Bank, valued
 
 *181
 
 243 acres at $90.00 per acre,-' and the remainder at $60.00 per acre. .
 

 “In arriving at the proper values we must consider that the property was not in first class condition, although perhaps not as bad as some of the witnesses have painted it. We must consider that it had quite.a bit of acreage fit only for pasturage; we must consider that Mrs. Vance owned only an undivided interest; we must consider that there was, at the time of her death, an outstanding option to lease the place for a period of five years at an extremely cheap rental.’ It seems to us that Mr. Pittman has given the fairest estimate of the value of the place, and that was $100.00 per acre for it in the condition in which it was in 1932. It was far from being in that condition.
 

 “Taking the above as a base figure, and then considering the condition of the property, and the other factors mentioned above, about Eighty Dollars per acre for the bottom land would be a top figure.
 

 “Taking up the valuation to be placed on the hill land, we must consider that none of it is fit for farming in its present condition ; that it has no timber on it of any particular value, and that it would cost quite a sum of money to make it revenue-producing, and that all the while one was attempting to market it, it would be a dead expense in the way of taxes. We do not doubt but that a good real estate man could take that tract, and sell off on time quite a bit of acreage for Ten Dollars per acre or even a little more, but that does not necessarily mean that the tract as a whole is worth Ten Dollars per acre.
 

 “We do not wish to be arbitrary in the least on this valuation. We realize that the preponderance of the testimony is to the effect that the hill land was worth Ten Dollars per acre. But we do not consider that these real estate brokers have considered the matter in the proper light. We think they are all looking at the matter from a sales standpoint; from the standpoint of breaking the land up into small tracts and selling it out. • This method has many pitfalls, and we domot think it fixes a standard of value for the whole. That entails having many tracts thrown hack on your hands, waiting .a long time for your money, having the burden of taxation to 'carry in the meanwhile, and having a lot of odds and end’s left on your hands which you will have trouble to even give away. We see no reason to disturb the valuation per acre placed on the hill land.”
 

 We are of the opinion that the lower court was correct in accepting Mr. Dutton’s survey as to the acreage of the bottom land and the acreage of the hill land. From the testimony it appears that Mr. Dutton was the only witness who made an' actual survey of the property. All the other witnesses estimated the acreage without making an actual survey.
 

 It is difficult from the testimony in this case to arrive at the true value of this property, since the estimates of the different witnesses as to the value are so far apart. In such a case the opinion of the judge of the lower court should be giv.en great weight for the reason that he is in a better position to know the.weight to.be
 
 *183
 
 given to the testimony of each witness. From the testimony as a whole it does not appear that the- value fixed by the lower court is erroneous.
 

 For the reasons assigned, the judgment of the lower court is affirmed.
 

 HIGGINS, J., absent.